Arnold ROGERS, Appellant,

v.

J. A. RUSSELL, Appellee.

No. 15602.

Court of Civil Appeals of Texas.

Fort Worth.

March 18, 1955.

W. E. Fitzgerald, Wichita Falls, for appellant.

R. Temple Driver, Wichita Falls, for appellee.

BOYD, Justice.

Appellee J. A. Russell sued appellant Arnold Rogers for damages for the alleged conversion of an automobile, praying for actual damages in the amount of $232 and for $1,000 exemplary damages. Trial was to a jury and judgment was rendered for appellee for $157 actual and $400 exemplary damages.

On June 7, 1952, appellee purchased a used Ford automobile from appellant at the agreed price of $695, paying $232 in cash and executing a note for the balance to be paid in monthly installments, beginning on July 15, 1952. Pacific Finance Corporation purchased the note. Appellee gave appellant another check for $18.30 to cover registration fee and transfer tax. This check was never paid. It was returned by the bank on which it was drawn, marked "account closed." Appellee testified that appellant agreed to hold the $18.30 check; that he had the money in the bank at that time, but needed it to cover other bills; that it was agreed that he would take the check up when he went to work. This was denied by appellant.

About the first of July, 1952, appellee called appellant by telephone and told him that he (appellee) was not working and that his brother-in-law, Loyal Hobbs, wanted to buy the car, and would come to Wichita Falls and see about having it transferred to him. It is appellee's version that he told appellant that he would be able to make the July 15th payment, and if apppellant did not make a deal with Hobbs, that Hobbs was to bring the car to appellee at Plains, Texas; that appellant agreed for Hobbs to pick up the license plates. Appellant testified that appellee told him in the telephone conversation that he could not pay for the car and wanted it transferred to Hobbs, and that appellee did not say that Hobbs was to return the car to appellee if it was not transferred to Hobbs.

Hobbs brought the car to appellant's place of business in Wichita Falls on July 2, 1952. He testified that he told appellant he had made a trade with appellee to pay the car out and he wanted to take it over; that appellant said he would "check the references and see;" that appellant did not check the references but wanted witness to talk to the Finance Company, and took witness to the Company's office, where he talked to Brown, the credit manager; that when Brown learned that witness was a minor he said that the transfer could not be made because witness could not refinance it; that witness told Brown he wanted to take the car back to appellee, and Brown said he had to leave it there; that Brown did not say where to leave it; that as witness and appellant drove back to appellant's lot, appellant told witness to leave the car on appellant's lot; that the car was then parked across the street from appellant's lot; that witness' wife was sitting in it; that witness drove the car to appellant's lot and left it there; that appellant drove witness and his wife to the bus station, and they went to Plains, Texas; that five or six days later appellee came to Plains and witness told him that the Finance Company would not agree to the transfer on account of witness' age, and that the Company told witness to leave the car in Wichita Falls; and that appellant told him to leave it on appellant's lot.

Brown, the Finance Company's credit manager, testified that his Company purchased appellee's note from appellant; that when appellant and Hobbs came to the office, appellant explained to the witness the circumstances surrounding the transaction, and explained that Hobbs was a relative of appellee and wanted the account transferred to his name; that this was all appellant said to him; that witness refused to transfer the account to Hobbs because he was a minor, did not have the funds required as an office fee to transfer the

account, or the funds to pay for the transfer of title and the state tax; that Hobbs was unemployed and did not know where he was going to get employment; that "As I recall, in talking with Mr. Hobbs, I learned that the automobile was not in a driveable condition. Due to that fact and also the fact that he had also previously stated that the original owner of the car, Mr. Russell, either didn't want to pay for it or wasn't going to pay for it, * * * I instructed him to put the car on Mr. Rogers' lot. * * * I assumed since Mr. Hobbs said Mr. Russell either was not going to pay for the car or could not pay for the car, that he no longer wanted it;" that Hobbs did not say he was to drive the car to Mr. Russell; that witness told appellant that he could not handle the transfer and had instructed Hobbs to put the car on appellant's lot; and that Hobbs consented "to putting the car on the lot."

. Appellant testified that when he sold the car to appellee, appellee told him that he was working and was earning $350 per month; that a few days before Hobbs came to appellant's place of business, appellee called him by telephone and said he wanted the car transferred to his brother-in-law; that appellee said he was out of a job and had not worked any, and could not pay for the car; that witness told appellee that it would depend on his party's references and financial standing and whether he could pay for the transfer of title papers; that when Hobbs came to appellant's place of business with the car, he asked about transferring it over to himself; that witness told Hobbs that he (witness) did not have anything to do with it, and that they would have to see the Pacific Finance Corporation; that witness took Hobbs to the Company's office; that Hobbs had left the car parked across the street from appellant's car lot; that witness had nothing to do with whether the Finance Company would agree to the transfer; that witness had no objection to such transfer; that as he and Hobbs drove back to witness' place of business, Hobbs told witness that "they told him to leave the car down on my lot or leave it here in town;" that witness did not tell Hobbs that he wanted to take possession of the car; that Hobbs made no objection to leaving the car there; that witness thought, from what appellee told him over the telephone, that appellee did not intend to pay for the car; that the July 15th payment was not made; that after it became due Pacific wanted its money and witness paid Pacific $486.79; that in September witness sold the car for $435, after having it repaired at a cost of $74.95; that he was bound to pay Pacific when the purchaser defaulted.

Appellee testified that when he saw Hobbs in Plains after the car was left in Wichita Falls, Hobbs told him that "Mr. Rogers taken it away from him when he come through Wichita;" that Hobbs said appellant told him that he had no right to be driving the car, and that he (Hobbs) did not know what he could do about it; that Hobbs said to witness, " 'I didn't know whether he could have me arrested or not.' "

In the charge, "Conversion" was defined as "any distinct act or dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it." The jury found that appellant, on or about July 2, 1952, "did take and convert to his own use the Plaintiff's Ford automobile."

The jury was further instructed: " 'Malice' (or maliciously) means a state of mind, on the part of the Defendant, to be found from the facts in the case, if any, which characterize an unlawful act intentionally done or without reasonable grounds for believing the act to be lawful." The jury found that "Defendant's conduct in taking Plaintiff's automobile" was malicious.

One assignment is that the evidence does not support the finding that appellant

acted maliciously with reference to the car, and that it was error to award a recovery for exemplary damages. We think there is no showing of malice such as to warrant recovery for punitive damages. Panola Motor Co. v. Corbin, Tex.Civ.App., 253 S.W.2d 688, writ refused; Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709; Bradshaw v. Buchanan, 50 Tex. 492; Puckett v. Patton, Tex.Civ.App., 16 S.W.2d 856; Erie Telegraph & Telephone Co. v. Kennedy, 80 Tex. 71, 15 S.W. 704; Lawson v. Townsend, Tex.Civ.App., 25 S.W.2d 170. The assignment is sustained.

■ Another point is that it was error to refuse appellant's requested issues asking whether Hobbs agreed to leave the car on appellant's lot, and at whose instance or direction did he leave the car. If any issue at all should have been submitted, we think these or similar issues should have been included in the charge. Appellee says they are merely evidentiary; but in the state of the record, we think it was material to learn if Hobbs left the car on appellant's lot at the request or direction of the Finance Company, for if so, we cannot understand how appellant could have been guilty of converting it.

■ By another assignment, appellant complains of the action of the court in overruling his objections to the testimony of appellee as to statements made to him by Hobbs at Plains, Texas. Hobbs testified fully as to appellant's connection with the leaving of the car on his lot. The testimony complained of was much more damaging to appellant than was the testimony of Hobbs himself. We think it was hearsay and prejudicial, and calls for a reversal of the judgment.

In view of another trial, when the evidence may not be the same, we do not determine whether the evidence in this record supported the finding that appellant converted the car.

For the reasons indicated, the judgment is reversed and the cause remanded.